**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

QAAID REDDICK,

        Movant,

    v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 2:17-cv-87

(Case No.: 2:15-cr-38)

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Qaaid Reddick ("Reddick"), who is currently housed at the Danbury Low

Federal Correctional Institution in Danbury, Connecticut, filed a 28 U.S.C. § 2255 Motion to

Vacate, Set Aside, or Correct Sentence. Doc. 1. The Government filed a Response. Doc. 7.

Reddick filed a Reply and "Addendum," docs. 13, 21. The Government responded to these

filings, doc. 24, and Reddick filed another Reply, doc. 25. For the reasons which follow, I

**RECOMMEND** the Court **DENY** Reddick's Motion, **DIRECT** the Clerk of Court to enter the

appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Reddick *in forma pauperis*

status on appeal and a Certificate of Appealability.

### BACKGROUND

Reddick and Brandon Conway were indicted and charged with conspiracy to possess with

intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 846; possession of heroin and

cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and possession of a

firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A).

United States v. Reddick, 2:15-cr-38 ("Crim. Case"), Doc. 1 at 1–4. Reddick was also charged

with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Id. at 5. After Reddick's appointed attorney, James Wrixam McIlvaine, filed several pre-trial motions on his behalf, the Government filed a notice of plea agreement. Crim. Case, Doc. 82. Reddick filed a change of plea. Crim. Case, Doc. 88. Reddick agreed to plead guilty to counts 1 and 4 of the indictment—the conspiracy to possess with intent to distribute and felon in possession charges. Crim. Case, Doc. 89 at 1, 3. In return, the Government agreed to move to dismiss the other two charges alleged in the indictment. Id. at 3. The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing, during which Special Agent Todd Kennedy provided the factual basis for the plea, Judge Wood accepted Reddick's plea, and Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR"). Crim. Case, Doc. 90. Judge Wood sentenced Reddick to 82 months' imprisonment as to each count, to be served concurrently. Doc. 114.

Reddick filed a notice of appeal. Doc. 117. Mr. McIlvaine filed an Anders brief and a motion to withdraw from further representation of Reddick with the Eleventh Circuit Court of Appeals.[1] The Eleventh Circuit found Mr. McIlvaine's "assessment of the relative merits of the appeal is correct" and that an examination of "the entire record reveals no arguable issues of merit . . . ." Doc. 136 at 2. The Eleventh Circuit granted Mr. McIlvaine's motion to withdraw and affirmed Reddick's convictions and sentences. Id.

Reddick has now filed his § 2255 Motion to challenge his sentence and conviction. Doc. 1. The Government filed a Response. Doc. 7. Reddick filed a Reply and an amendment, the Government filed a Response to the amendment, and Reddick filed an additional Reply. Docs. 13, 21, 24, 25. Reddick's § 2255 Motion is now ripe for review.

---

[1] Anders v. California, 386 U.S. 738 (1967). Briefs filed based on this case are based on the belief there are no non-frivolous grounds to appeal.

**DISCUSSION**

**I.      Whether Reddick's Appointed Counsel Rendered Ineffective Assistance**

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).  This right also extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and on appeal, Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate: (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Id. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that

seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207

(5th Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Strickland, 466 U .S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).

## A.    During Plea Negotiations

Reddick contends his counsel did not advise him as to the dangers and disadvantages of pleading guilty.  Doc. 1 at 4.  Reddick also contends Mr. McIlvaine did not investigate the facts in this case, which led to counsel overlooking "the key fact" that the evidence could not support Reddick's § 992(g)(1) conviction and that counsel knew or should have known Reddick could not have conspired with federal agents.[2]  Id.; Doc. 1-1 at 3.  Specifically, Reddick asserts the informant only had toy or "prop" guns, which could not have risen to the level of "weapons" within the meaning of § 922(g)(1).  Doc. 1-1 at 4.  Instead, Reddick argues that, had Mr. McIlvaine investigated the facts of this case regarding the "prop" guns and "the scam to beat Reddick out of his spoils," he would have advised Reddick not to plead guilty.  Id. at 6.  Reddick maintains there is a reasonable probability he would have rejected the plea agreement and proceeded to trial had Mr. McIlvaine advised him on the Government's burden of proof.  Doc. 1 at 4.

The Government asserts Reddick was depicted on tape committing the crimes charged, confessed to those crimes, and admitted all of the facts contained in his plea agreement.  Doc. 7

---

[2]    Reddick writes of a conspiracy—seemingly in relation to the firearms offenses—throughout his pleadings.  Doc. 1 at 4; Doc. 1-1 at 3; Doc. 13 at 3.  However, Reddick and his co-defendant were not charged with conspiracy as to any firearms offense, only as to the drug offense, to which Reddick does not seem to object.  Crim. Case, Doc. 1.  In his Reply to the Government's Response, Reddick addresses only tangentially the grounds of ineffective assistance he raised in his original Motion and attempts to argue the underlying offense conduct and other facts not originally raised in his Motion.  Doc. 13.  Because the "conspiracy with federal agents" issue not presented in any cogent way, the Court does not address it further.

at 14.[3]  The Government notes Reddick testified during the Rule 11 proceeding that he understood the purpose of the hearing and his rights and that he wanted to plead guilty because he was guilty of the offenses to which he was pleading guilty.  Id.  The Government also notes Reddick stated at the hearing that Mr. McIlvaine reviewed the possible punishment and advisory Guidelines range.  Id. at 15.  In addition, the Government states Reddick did not hesitate in answering questions or express a desire to proceed to trial, and Reddick stated no one had pressured him into pleading guilty.  Id. at 15–16.  The Government alleges Reddick's current assertions regarding the § 922(g)(1) offense are contradicted by the record in this case.  Id. at 16.  Had Reddick gone to trial, the Government contends he would have received a much higher sentence than he did, unless the Court found a reason to depart from the Guidelines range, which is not apparent and which has not been suggested.  Id.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases."  United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted).  The standard for

---

[3]  The Government avers Reddick's claim that his plea was not entered into knowingly and voluntarily is procedurally defaulted, and, in an attempt to overcome this procedural default, Reddick claims he is factually innocent of the § 922(g)(1) charge.  Doc. 7 at 11.  While it appears Reddick's claims regarding the voluntariness of his plea and the effectiveness of his counsel during plea negotiations are separate enumerations of error, there is sufficient overlap between these two that the Court has addressed the voluntariness of Reddick's plea within the context of his claim that counsel was ineffective during the plea negotiations.  In addition, Reddick could not have raised the contention that his plea was not entered into knowingly and voluntarily on appeal, given that Mr. McIlvaine filed an Anders brief, and the Eleventh Circuit agreed with Mr. McIlvaine's assessment as to the relative merits of an appeal.

determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. Cannon v. Jones, Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing McMann v. Richardson, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1965 (June 23, 2017). "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Spriggs v. United States, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted). A movant

"alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors." Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163 (2012)). "Further, the decision to reject the plea must have been 'rational under the circumstances.'" Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Cannon, 2017 WL 990583, at *10 (citing Strickland, 466 U.S. at 689).

Reddick and his attorney, Mr. McIlvaine, were able to negotiate a plea agreement with the Government whereby Reddick agreed to plead guilty to conspiracy to distribute heroin and cocaine and being a felon in possession of a firearm. Crim. Case, Doc. 89 at 1, 4–5. In exchange, the Government agreed to move the Court to dismiss the remaining two counts of the indictment. Id. at 3. Reddick faced a statutory sentence of not more than 20 years' imprisonment on the conspiracy charge and not more than 10 years' imprisonment on the felon in possession charge. Id. at 2. The plea agreement set forth the statutory elements and factual bases of the offenses to which Reddick was pleading guilty. Id. at 5–7. Reddick agreed that he was guilty of the offenses. Id. at 5. In addition, Reddick affirmed he had read and reviewed the agreement with his attorney, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate. Id. at 13.

Reddick appeared before Judge Wood for his Rule 11 proceeding. Judge Wood addressed Reddick and informed him that the purpose of the hearing was to ensure he understood the case that was pending against him, that he understood all of the rights he was waiving or giving up by pleading guilty, that there was a factual basis for the guilty plea, and that, after consultation with Mr. McIlvaine, pleading guilty was what Reddick wanted to do. Crim. Case, Doc. 126 at 5. Judge Wood inquired whether anyone had made or pushed Reddick to offer to plead guilty, and he said no one had done so and that pleading guilty was what he wanted to do. Id. at 6. Judge Wood told Reddick he did not have to plead guilty. Id. at 10. Judge Wood also told Reddick that, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent. Id. at 11. However, Judge Wood cautioned Reddick he would be waiving these rights if he pled guilty and she accepted that guilty plea. Id. at 12.

Reddick stated he understood. Id. Reddick also stated he and Mr. McIlvaine had had the opportunity to talk about the facts and the law pertaining to his case, as well as about the proposed plea agreement and the United States Sentencing Guidelines in general terms. Id. at 13. Reddick stated he was satisfied with Mr. McIlvaine's representation and had no complaints about his representation whatsoever. Id.

Judge Wood reviewed the indictment with Reddick and the essential elements of the crimes to which he was pleading guilty and the other two counts of the indictment and advised Reddick the Government would have to prove those essential elements. Id. at pp. 14–17. By pleading guilty, Judge Wood noted Reddick was admitting the essential elements of the two

crimes to which he intended to plead guilty were satisfied. Id. at 17–18. Judge Wood advised

Reddick of the maximum sentence she could impose. Id. at 18. Moreover, Judge Wood

explained to Reddick that, in imposing a sentence upon him, she would have to take into

consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

Id. at 18–19.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the

provisions of the plea agreement. AUSA Greg Gilluly stated the material provisions were:

> The Government will not object to a recommendation from the probation office that the defendant receive a three-level reduction for acceptance of responsibility based on timeliness of his plea providing that the defendant truthfully admits the conduct comprising the offense of conviction; has fully complied with the terms of release, if applicable; and has not engaged in any conduct, criminal, subsequent to his arrest or initial appearance in this matter.
>
> The Government agrees it will not file an enhancement pursuant to [Title] 21, United States Code, Section 851, if applicable.
>
> At sentencing, the Government will move the Court to dismiss the defendant from the other counts of the indictment, and, if earned, the Government will file a 5K1.1 motion or a Rule 35 motion as outlined in the plea agreement.
>
> The defendant agrees that he will plead guilty to Counts 1 and 4 of the indictment. He agrees to acknowledge, at the time of the plea, the truth of the factual basis contained in the plea agreement. He agrees to pay, on the date of sentencing, any assessments imposed by the Court.
>
> He agrees to cooperate in all state and federal proceedings as outlined in the plea agreement and agrees to waive his right to appeal on any grounds. There are two exceptions as outline in the plea agreement, and there is a waiver of his right to collaterally attack his conviction with the—there is an exception as well, and that is outlined in the plea agreement.

Id. at 21–22. Judge Wood asked Reddick if AUSA Gilluly's summarization of the plea

agreement was consistent with the plea agreement he signed, and he stated it was. Id. at 22–23.

Reddick also stated he read the plea agreement, and Mr. McIlvaine answered any questions he

may have had before he signed the agreement. Id. at 23. Reddick affirmed no one had made him

any promises regarding the outcome of his case, other than the provisions contained in the plea agreement.  Id.

Judge Wood then asked Reddick whether he wished to still plead guilty to counts one and four of the indictment because he was in fact guilty of those counts, and he answered in the affirmative.  Id. at 24.  Judge Wood also asked Reddick whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did.  Id. at 25.  Judge Wood determined Reddick's offer to plead guilty was "knowing[]" and "voluntar[y]."  Id.  Reddick agreed.  Id.

The Government provided a factual basis for Reddick's plea of guilty by calling Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Todd Kennedy to testify.  Id. at 26.  Agent Kennedy testified he received information in September 2015 that Reddick, a New York resident, was interested in "trading guns for drugs in Georgia" and taking the guns back to New York.  Id. at 27.  After finalizing the details, Reddick and his co-defendant (Conway) traveled by bus from New York to Brunswick, Georgia, and then the two went to the Clarion Inn in Brunswick to meet the person they believed to be a firearms trafficker, but who was actually an undercover ATF agent.  Id. at 27–28.  The hotel room was wired with audio and surveillance equipment.  Upon entry into the room, Reddick "immediately started handling the drugs[,]" while Conway inspected the firearms.  Id. at 28.  Agent Kennedy also stated Reddick "inspected the firearms.  And after being satisfied with the firearms, the parties exchanged the heroin and cocaine for the firearms."  Id. at 29.  The ATF tactical team raided the room and arrested Reddick and Conway after the exchange.  Id.  Upon Judge Wood asking where the firearms were located, Agent Kennedy stated the agents had secreted them in a toolbox, which was locked "primarily to make sure that when the arrest team made entry into the room that ATF and

[he] . . . and his co-investigator had secured them in a manner where he wouldn't be able to mistakenly have one in his hands." Id. at 29–30. Agent Kennedy clarified the undercover agent locked the guns back into the toolbox after Reddick and Conway examined the guns and gave Conway the key. Id. at 30. Agent Kennedy stated both Reddick and Conway "were readily observed on video handling and manipulating the guns." Id. In addition, Agent Kennedy stated Conway was "videoed handing Mr. Reddick the key [to the toolbox] shortly before their arrest[s]." Id. On cross-examination, Mr. McIlvaine asked how many firearms Reddick had handled and whether Conway handled all of the weapons. Id. at 31.

Judge Wood then asked Reddick if he disputed any of the testimony given by Agent Kennedy. Reddick and Mr. McIlvaine conferred, then Reddick confirmed that he did not dispute any of Agent Kennedy's testimony and admitted to the truth of that testimony. Id. Judge Wood accepted Reddick's plea and adjudged him guilty of counts 1 and 4 of the indictment. Id. at 32. Judge Wood advised Reddick that a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. McIlvaine. Id.

To be clear, Judge Wood informed Reddick at the outset of the Rule 11 hearing the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Reddick wanted to do after consultation with his attorney. Id. at 5. After telling Reddick he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing, Reddick averred that no one was forcing him to plead guilty and that pleading guilty was what he wanted to do. Id. at 6. Judge Wood discussed the specific rights Reddick was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Reddick he would

waive those rights if he pleaded guilty and she accepted his plea.  Id. at 11–12.  Reddick stated

he was satisfied with Mr. McIlvaine's representation, had no complaints whatsoever, and had

spoken with Mr. McIlvaine about the facts and law of his case.  Id. at 13.  Reddick verified that

AUSA Gilluly's summary of the plea agreement was consistent with the plea he had signed.  Id.

at 22.  Judge Wood asked Reddick whether he wanted to plead guilty because he was, in fact,

guilty of counts 1 and 4 of the indictment, and he answered in the affirmative.  Reddick declared

he understood the rights and privileges he was waiving by pleading guilty and proceeded to do

so.  Id. at 24–25.  Judge Wood determined Reddick's guilty plea was knowing and voluntary.  Id.

at 25.  Agent Kennedy then provided a factual basis for Reddick's plea, and Reddick agreed with

the Government's factual basis.  Id. at 31.  Judge Wood accepted Reddick's plea and adjudged

him guilty of conspiracy to possess with intent to distribute cocaine and heroin and being a felon

in possession of a firearm.  Id. at 32.

Reddick's assertion that Mr. McIlvaine was ineffective during the plea phase and, had it

not been for Mr. McIlvaine's ineffective assistance, he would not have pled guilty, is belied by

the record before the Court and is without merit.  If Reddick had not entered a plea agreement,

proceeded to trial on all four counts of the indictment, and been convicted of those counts, he

would have faced a Guidelines' range of 51 to 63 months' imprisonment as to counts 1 and 2 and

a mandatory, consecutive term of at least 60 months' imprisonment as to count 3, for a total of

111 to 123 months.  PSR, ¶ 81.[4]  Because Reddick pleaded guilty, his sentencing range was 70 to

87 months' imprisonment, id. at ¶ 80, or a sentencing range of at least 36 months lower than

what he ordinarily would have faced.  What is more, the record before the Court, including the

statements Reddick rendered under oath and under penalty of perjury, belies Reddick's

---

[4]    Though not accounted for in the PSR, it appears Reddick would have also had an advisory
Guidelines' range for count 4 of the indictment, his felon in possession charge.

contentions in his Motion as to Mr. McIlvaine's assistance during the plea process and whether his plea was entered into knowingly and voluntarily.

Further, Reddick, in his opening materials, refers to the firearms at issue being "prop" guns, toys, or fake guns and that the firearms did not meet the statutory definition as such. Doc. 1-1 at 4–6. Reddick did not explain why he feels these firearms could not support his § 922(g)(1) conviction until his Response to the Government's opposition to his amendment. Doc. 25. Therein, Reddick states "a firearm without a firing pin is not considered a lethal weapon unlawfully held by a felon." Id. at 4. A "firearm" for purposes of § 922 and Reddick's argument is defined as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive . . ." 18 U.S.C. § 921(a)(3)(A). Courts analyzing whether a firearm without an operable firing pin can be used to support a § 922(g)(1) conviction have determined it does. United States v. Padilla, 393 F.3d 256, 257–58 (1st Cir. 2004) (finding no abuse of discretion by trial court in declining to give jury instruction whether gun defendant possessed, which lacked a firing pin and magazine, was a firearm within meaning of § 922(g)), *overruled on other grounds*, 415 F.3d 211 (1st Cir. 2005); United States v. Yannott, 42 F.3d 999, 1006 (6th Cir. 1994) ("[T]he law is clear that a weapon does not need to be operable to be a firearm."); United States v. McSwain, 207 F. App'x 355, 356 (4th Cir. 2006) (same); United States v. Cater, No. 6:15-CR-37, 2017 WL 11446928, at *3 (E.D. Ky. Aug. 2, 2017) ("Because any defense based on the broken firing pin would have been futile, counsel could not have been ineffective for failing to conduct further investigation into the matter."); United States v. McCollum, No. 5:01CR16, 5:04CV62, 2005 WL 2176867, at *3 (N.D. Fla. Sept. 7, 2005) (finding that, even if firing pin had been removed from gun, it was still a firearm under § 921(a)(3)); see also United States v. Adams, 137 F.3d 1298, 1300 (11th Cir.

1998) (noting §§ 922(g)(1) and 921(a)(3) do not require the government to show a firearm is operable for purposes of § 922(g) and "that every circuit addressing the issue has reached the same conclusion[]") (citing cases). The same is true regarding the definition of "firearm" under the United States Sentencing Guidelines. See United States v. Brown, 117 F.3d 353, 356 (7th Cir. 1997) ("[T]he removal of a gun's firing pin is not so significant an alteration as to exclude the gun from the definition of firearm" under the Guidelines.).

Reddick's argument that Mr. McIlvaine rendered ineffective assistance regarding the firearms at issue being "prop" or toy guns, and thus, not firearms within the meaning of § 922(g)(1), would have been futile. In addition, Reddick presents no evidence that the firearms at issue were not real firearms within the meaning of § 922(g)(1). Reddick has not shown he would have not pleaded guilty under these circumstances. Thus, Mr. McIlvaine cannot be said to have been ineffective for failing to present "evidence" or information that the firearms were "prop" or toy guns and did not fall within the definition of a firearm under § 922(g)(1).

Reddick is not entitled to his requested relief, and the Court should **DENY** these portions of his Motion.[5]

---

[5] In his Reply, Reddick contends Mr. McIlvaine kept important materials, such as the videotape of the transaction, from him until after he was sentenced. Doc. 13 at 3. Here, the only evidence of record relating to the videotape of the transaction at issue comes from Agent Kennedy's testimony. Agent Kennedy testified that the video surveillance equipment captured Reddick handling the drugs, readily handling and manipulating the firearms, and being handed the key to the toolbox where the firearms were being kept for safekeeping. Crim. Case, Doc. 126 at 28–30. Reddick agreed with Agent Kennedy's testimony. Id. at 31. There is nothing other than Reddick's conclusory assertions that Mr. McIlvaine kept important material such as this videotape from him until after sentencing. What is more, there is nothing before the Court which reveals this videotape depicted anything other than what Agent Kennedy's testimony revealed—that Reddick handled the drugs and firearms. Reddick's assertions in this regard are wholly without merit and, even if accepted as true, do not show Mr. McIlvaine rendered ineffective assistance. Reddick cannot show there is a reasonable probability that he would not have pled guilty in light of the videotape or any other information he maintains was key to his decision on whether to enter a guilty plea.

### B. During Sentencing

Reddick avers Mr. McIlvaine's ineffective assistance during sentencing was a byproduct of his ineffective assistance during plea negotiations. Doc. 1 at 5. Reddick states his counsel failed to argue at sentencing that the "prop" guns were not firearms and could not be the cause of him being charged with violation of federal law. Doc. 1-1 at 4. Reddick asserts he received three four-level enhancements and a two-point offense level increase based on the "prop" guns. Id. at 4–5. Reddick alleges his counsel's performance subjected him to be punished based on "fake evidence." Id. at 5.

In response, the Government states the firearms involved in the underlying offense were actual firearms, and any objection at sentencing would have failed. Doc. 7 at 22. The Government maintains the Court applied a four-level increase because the offense involved at least 8 but fewer than 24 firearms, another four-level increase based on trafficking firearms, and another four-level increase due to Reddick's possession or use of a firearm during the commission of another felony offense. Id. Additionally, Reddick was assessed a two-level increase because a firearm was used or possessed during a drug trafficking offense. Id.

According to the probation officer, Reddick and his co-defendant "handled and inspected" nine firearms as part of the exchange of drugs for firearms. PSR, ¶ 16 (describing the make, model, serial number, and manufacturer location of the nine firearms). These nine firearms were all manufactured outside of Georgia or New York and were real firearms with serial numbers and places of manufacture. Id. The probation officer assigned a four-level increase under U.S.S.G. § 2K2.1(b)(6)(B) because Reddick possessed nine firearms in connection with another felony (possession with intent to distribute heroin and cocaine). Id. at ¶ 35. After analyzing the offense characteristics and relevant enhancements, as well as

calculating Reddick's criminal history, the probation officer determined Reddick had a total offense level of 23 and a criminal history category of IV.  Id. at ¶ 80.  Thus, Reddick's Guidelines range was 70 to 87 months' imprisonment.  Id.

At the outset of the sentencing hearing, Mr. McIlvaine informed the Court he had intended to object to this four-level increase under § 2K2.1(b)(6)(B) until the Government's attorney pointed out Eleventh Circuit precedent that foreclosed that objection.  Crim. Case, Doc. 122 at 3.  In response, Judge Wood informed Mr. McIlvaine that, unless he could have presented contrary precedent, she would have overruled that objection.  Id. at 4.  After briefly discussing Mr. McIlvaine's other two objections—not relevant to Reddick's present contentions, Judge Wood adopted the factual statements in the PSR as her findings of fact and the probation officer's application of the advisory Guidelines as her legal conclusions.  Id. at 5–6.  Mr. McIlvaine called upon Reddick's mother to testify during the sentencing hearing.  Id. at 7–13.  He also brought to the Court's attention that Reddick had made positive changes since being in jail and that, although Reddick had not provided specific enough information the Government found to be helpful, he was willing to provide information to aid the Government in its investigation of cases.  Id. at 15–17.  Mr. McIlvaine asked the Court to consider sentencing Reddick to the minimum sentence to which he would be entitled under the Guidelines.  Id. at 18.  After consideration of what occurred at the sentencing hearing, the PSR, and the factors set forth in 18 U.S.C. § 3553, Judge Wood sentenced Reddick to 82 months' imprisonment on each count, to be served concurrently with each other.  Id. at 21.

The evidence of record at sentencing clearly established the nine firearms at issue were actual firearms and not "prop" or toy guns as Reddick argues, as noted in the preceding Section.  Thus, Mr. McIlvaine cannot be said to have rendered ineffective assistance by failing to object to

these guns being "firearms" within the meaning of §§ 922(g)(1) and 921(a)(3) and the resulting enhancements under the Guidelines. What is more, Mr. McIlvaine presented argument to the Court in mitigation of sentencing. The fact that the Court did not find any reason to depart from the Guidelines does not mean Mr. McIlvaine was ineffective. Thus, Reddick is not entitled to relief on this ground, and the Court should **DENY** this portion of Reddick's Motion.

### C. On Direct Appeal

Reddick contends Mr. McIlvaine erred by filing an <u>Anders</u> brief on appeal. Doc. 1 at 8. In this regard, Reddick asserts counsel could not properly advise him during the plea negotiations because counsel did not investigate to discover the weapons charged was based on "prop" guns that could not have affected interstate commerce. But for counsel's performance, Reddick avers there is a reasonable probability of a different outcome on appeal. <u>Id.</u> The Government contends McIlvaine could not have rendered ineffective assistance on appeal by failing to raise meritless issues on appeal. Doc. 7 at 22–23.

To the extent Reddick argues his counsel's performance on appeal was deficient, such a claim is "governed by the same standards applied to trial counsel under <u>Strickland</u>." <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." <u>Shere v. Sec'y. Fla. Dep't of Corr.</u>, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing <u>Smith v. Robbins</u>, 528 U.S. 259, 285–86 (2000)). "Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." <u>Jones v. Sec'y, Dep't of Corr.</u>, 487 F. App'x 563, 568 (11th Cir. 2012) (citing <u>Nyhuis</u>, 211 F.3d at 1344). "An attorney is not required under the Constitution or the <u>Strickland</u> standards to raise every non-frivolous issue on appeal." <u>Brown v. United</u>

States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983) ("Nothing in the Constitution or our interpretation of that document requires an appellate attorney to raise every 'colorable' claim suggested by a client.")).

Mr. McIlvaine filed an Anders brief with the Eleventh Circuit. The Eleventh Circuit panel agreed with Mr. McIlvaine's "assessment of the relative merit of the appeal . . . ." United States v. Reddick, 686 F. App'x 833, 834 (11th Cir. 2017). The Eleventh Circuit's "independent examination of the entire record" revealed "no arguable issues of merits," and it affirmed Reddick's convictions and sentences. Id. Reddick's contention that the firearms at issue were "prop" guns was reasonably considered to be without merit, and Mr. McIlvaine's failure to raise that issue on appeal cannot be considered ineffective. Reddick has presented no argument that even whispers the suggestion that, had Mr. McIlvaine raised this contention on appeal, the Eleventh Circuit would not have affirmed Reddick's convictions and sentences. Thus, the Court should **DENY** this portion of Reddick's Motion.

In sum, Reddick has shown no reason to vacate, set aside, or correct his sentences or convictions. The Court should **DENY** his Motion in its entirety.

## II.      Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Reddick leave to appeal *in forma pauperis*. Though Reddick has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687,

691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th

Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Miller-El</u>, 537 U.S. at 336.

Based on the above analysis of Reddick's Motion and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Reddick a Certificate of Appealability, Reddick is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Reddick's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Reddick a Certificate of Appealability and *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Reddick and the United States Attorney for the Southern District of Georgia.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 1st day of November, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA